## William Bussen et al. v. B. A. Dickson.

1. FORCIBLE ENTRY AND DETAINER—*Submerged Lands.*—Where a plaintiff in an action of forcible entry and detainer claims nothing but what it is conceded his grantor's title covered, including the shore and some submerged lands to the middle of a stream, the emergence of the submerged portion will not divest him of his title.

2. SAME—*Plaintiff's Possession of Submerged Lands.*—Where the plaintiff in an action of forcible entry and detainer shows that he and his grantors had held continuous possession of what remained of the shore portion of a submerged tract of land since 1856, it was held that such possession was sufficient to sustain the action against any person entering upon and occupying any portion of the tract.

3. SAME—*What is a Wrongful Possession of Submerged Lands.*— Where the evidence shows that the plaintiff is entitled to the possession of the whole tract of land (part of which is submerged) described in his complaint, and the fact that the defendant had entered upon that portion of it which had emerged, and had grown and was growing crops on such portion, is sufficient to warrant the court in finding him guilty, and rendering judgment against him for the possession of the whole tract.

**Forcible Entry and Detainer.**—Appeal from the Circuit Court of Monroe County; the Hon. MARTIN W. SCHAEFER, Judge, presiding. Heard in this court at the February term, 1901. Affirmed. Opinion filed September 4, 1901.

JULIAN LAUGHLIN and Jos. W. RICKERT, attorneys for appellants.

CHAS. MORRISON and DILL & WILDERMAN, attorneys for appellee.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in forcible entry and detainer, commenced before a justice of the peace, in Monroe county, by appellee against appellants, to recover possession of certain lands described in the complaint. From the judgment rendered by the justice an appeal was taken to the Circuit Court, where the case was tried before the court without a jury, by agreement of the parties. This trial resulted in a

finding and judgment in favor of appellee for possession of the land described in the complaint.

The lands in controversy are described in the complaint as follows :

" Beginning on range line between ranges 10 and 11 W., T. 1 S., 5.47 chains south of the southern boundary of survey 432; thence north on said range line, 5.47 chains to the south boundary line of said survey 432; thence south 86 degrees 25 minutes west on said boundary line, 1391 chains, to the northwest corner of said survey; thence north 2 degrees 35 minutes west, 13.68 chains, to the north-west corner of said survey; thence north 13 degrees 25 minutes east, 23.18 chains; thence north 76 degrees 20 minutes west, 11 chains, to the bank of the Mississippi river; thence down aid rsiver, with the meanderings thereof, to a point on the bank of said river, directly west of the beginning point; thence east along the boundary line between B. A. Dickson and L. Warnock, 35 chains, to the beginning corner."

The middle of the main channel of the Mississippi river is the west boundary line of the State of Illinois. St. Louis v. Rutz, 138 U. S. 226; Bellefontaine Co. v. Niedringhaus, 181 Ill. 426. Appellants own the south part of an island in the Mississippi river, on the Illinois side of the main channel. In 1808 this island was surveyed and platted by the government as " Island No. 4," and in 1842, the south part of it was patented to Samuel Carroll. It is known in this record as Carroll Island, and appellants succeed to Carroll's title. Appellee's remote grantor owned a tract of land on the Illinois shore opposite the south end of Carroll Island, described by metes and bounds, as above quoted from the complaint, and appellee succeeds to that title. An arm of the river, known in this record as Carroll Island Slough, lay between the shore and the island. Afterward the river so changed as to greatly enlarge the slough and widen the space between the island and the shore by cutting away the shore, and submerging a large portion of the land owned by appellee's grantor and now claimed by him. About 1872 the river began to change back to the west side of the island, and the slough began to fill. This pro-

gressed until at the time this suit was commenced, much of the land originally covered by its waters was dry land and some of it in cultivation.

It is admitted that title to the disputed land was originally in appellee's grantors, but appellants' counsel contends that by the changings of the river, first in cutting away appellee's land and afterward by its recession and change back to the west side of the island, and by the filling up of the slough, the land in dispute ceased to belong to the shore owner and became an accretion to the island, and that thereby appellee was divested of title and right of possession. It must be borne in mind that appellee claims nothing by accretion, but only what it is conceded his grantor's title covered. Appellee owned both the shore and submerged lands to the middle of the slough. Griffin v. Johnson, 161 Ill. 377. The emergence of the submerged portion did not divest him of his title. It was his when it lay covered by water, and it remained his after it had arisen above the water by the deposit of alluvion thereon by the action of the river or otherwise, or had become dry land by the recession of the water or change of the channel of the river.

Appellants' counsel further contends that appellee had not previously had such possession of these lands as is necessary to support an action of forcible entry and detainer. The evidence conclusively shows that appellee and his grantors had held continuous actual possession of what remained of the shore portion of the tract, at least since 1856. This was sufficient possession of the whole tract to support an action of forcible entry and detainer against those who might wrongfully enter upon and occupy any portion of such tract. Griffin v. Kirk, 47 Ill. App. 258; Nauman v. Burch, 91 Ill. App. 48.

The only remaining question is as to the possession of appellants. Their counsel insist that they were not in such possession at the time suit was commenced as to support the judgment, and say the suit and judgment is for "all" the land described in the complaint. "What right had the trial court to give appellee judgment against appellants, for

unlawfully withholding from appellee that portion of appellee's land which the river had never taken ? * * . * There is no pretense that this land (the shore portion of the tract) was in appellants' possession." The evidence shows that appellee was entitled to possession of the whole tract described in the complaint, and tends to show, and the trial court was fully warranted in believing from the evidence, that appellants had entered upon that tract and had grown and were growing crops on a portion of it. This is sufficient to warrant the court in finding them guilty, and rendering judgment against them for possession of the whole tract. Hardin v. County of Sangamon, 71 Ill. App. 103, is a case in which this question was directly before the court. In discussing the question the court said :

"'The statute is that 'if it shall appear on the trial that the plaintiff is entitled to the possession of the whole of the premises claimed, he shall have judgment and execution for the possession thereof.' * * * Whether the judgment and execution should be for the whole or only a part of the premises claimed * * * is thus made to depend, not on the extent of the defendant's actual possession, but on that of the plaintiff's right of possession."

We find no substantial error in this record. The judgment of the Circuit Court is affirmed.