## J. J. Hardin and D. O'D. Hallihan v. County of Sangamon.

1. COUNTIES—*Functions of the County Board Largely Executive.*— Under our statutes the functions of a county board are largely executive as they buy, care for, lease, sell and convey real and personal property, make contracts, examine and settle accounts, appoint agents, erect buildings and keep them in repair, provide rooms, furniture and other facilities for the transaction of the business of the county officers, and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers.

2. SAME—*Right of Possession of County Property Vested in County Board.*—A county has such right of possession and control of a court house as attaches to and flows from its ownership, and its corporate powers and duties imposed by law, and in respect to such powers and duties the county board is the county, and has a continuing right of possession of a court house belonging to the county, and may bring a forcible entry and detainer suit in the name of the county to recover possession of any part thereof illegally occupied.

3. SHERIFFS—*Character of their Possession of Court Houses.*—A sheriff has no such possession of a court house as gives him the sole right to maintain an action in his own name for a trespass to, or forcible entry and detainer of it, or any part of it.

4. SAME—*Are Mere Custodians of Court Houses.*—The statute gives a sheriff the custody and control of the court house and jail of his county, "except as otherwise provided," but he is a mere custodian and does not supersede the owners in their actual or legal possession, and in whatever he does touching the care of them, he is subject to and acts under the express or implied authority of the county board, except as to orders of the court he is attending where its convenience, dignity or duty is immediately concerned or where such orders are expressly authorized by law.

5. SAME—*Possession of Court House by, is Possession of County.*— The law does not recognize any estate or interest of the sheriff, possessory or otherwise, in the court house or jail. They are purely public buildings, belonging wholly to the county as a body corporate, dedicated to public uses only, in which therefore, while so used, no other person,

natural or artificial, private or official, can have any exclusive proprietary right. The sheriffs relation to them is only that of one employed and paid to take care of them for these uses, as a part of his official duty, and all the possession he has, being merely incidental to that part of his duty, is in fact and law, the possession of the county.

6. RECORDERS—*Character of Their Possession of Their Offices.*—A county recorder is a public officer, chosen as the agent of the law for certain public purposes prescribed and limited by it, and the county in its corporate capacity provides him with an office, and lets him into possession of it for those purposes, and those only. His right extends no further than is necessary or naturally incidental to the performance of his official duties and his possession is the actual possession of the county.

7. SAME—*Right of Public to Use Offices of, Defined.*—The statute provides that all persons shall have free access for inspection and examination to the records, indices, books and instruments kept in the office of any recorder, and the right to take memoranda and abstracts thereof without fee or reward, but this is the extent of the right of the public to use or occupy a recorder's office without the consent of the county, express or implied, and no one is by law authorized to occupy it or any part of it as his office for the regular and continuous transaction of his private business.

8. FORCIBLE DETAINER—*Actual Possession.*—Persons who keep their private books, blanks, furniture and other means required for the transaction of their private business as abstracters and conveyancers, in the office of a county recorder and transact their business there, are in actual possession of at least so much of such office as is thus used, within the meaning of the forcible entry and detainer act.

9. SAME—*When Judgment May Be for the Whole of Premises Claimed.*—Whether the judgment and execution in a forcible entry and detainer suit should be for the whole or only a part of the premises claimed, if either, depends, not on the extent of the defendant's actual possession, but on the extent of the plaintiff's right of possession, and the fact that the defendant was in possession of only a part of the premises claimed can not be urged as an objection to a judgment for the whole of the premises.

Forcible Detainer, for part of a recorder's office. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed June 16, 1897.

PATTON, HAMILTON & PATTON, attorneys for appellants.

The action of forcible detainer being a special statutory proceeding, summary in its nature and in derogation of the common law, it follows that the statute conferring jurisdiction must be strictly pursued, and each case must be shown

to be within the meaning and intention of the statute in order that the court will take jurisdiction of it.    French v. Willer, 126 Ill. 611; Burns v. Nash, 23 App. 552.

The plaintiff must always show a right of possession in himself and can not rely on the lack of the right of possession in the defendant.    McIlwain v. Karstens, 152 Ill. 135.

In a suit for forcible detainer, as this is, the plaintiff must show that he was entitled to possession at the time the suit was brought.    Maloney v. Shattuck, 15 Ill. App. 44.

It is also well settled in this State that neither forcible entry nor forcible detainer will lie by the owner of the land who has leased same to a tenant, because the right to the possession is, in such case, in the tenant.    Mann v. Brady, 67 Ill. 95; McCartney v. McMullen, 38 Ill. 237; Dudley v. Lee, 39 Ill. 339.

And this is true even when the tenant has not taken possession under the lease.

The law is that plaintiff can not maintain forcible detainer unless the defendant's possession is shown.    Bowman v. Mehring, 34 Ill. App. 389; Godard v. Lieberman, 18 Ill. App. 366.

Possession is usually defined to be "The detention or enjoyment of a thing, which a man holds or exercises by himself or by another who keeps or exercises it in his name. It implies exclusive enjoyment."    18 A. & E. Ency. 840.

To constitute possession of land there must be some unequivocal act of ownership upon it.    Brooks v. Bruyn, 24 Ill. 373.

E. S. SMITH, attorney for appellee.

A person who does not eat or sleep on premises, but who occupies them with his effects is in possession and can not be expelled by force.    Baker v. Hays, 28 Ill. 387.

An entry against the will of another is forcible in contemplation of law.    Croff v. Ballinger, 18 Ill. 200; Smith v. Hoag, 45 Ill. 250; Reeder v. Purdy, 41 Ill. 279; Phelps v. Randolph, 147 Ill. 335.

The action of forcible detainer may be maintained against any one wrongfully in possession.

.The landlord may maintain the action against the sub-lessee. Reed v. Hawley, 45 Ill. 40; Patchell v. Johnston, 64 Ill. 305.

Or the tenant against the landlord. Phelps v. Randolph, 147 Ill. 335.

The action will lie against one wrongfully holding a room. Reynolds v. Thomas, 17 Ill. 207; Patchell v. Johnston, 64 Ill. 305.

One joint tenant may maintain the action against his joint tenant for a moiety. Mason v. Finch, 1 Scam. 495.

A license to occupy may be revoked at any time and gives the licensee no right of occupancy against the licensor. Dunstedter v. Dunstedter, 77 Ill. 580.

A person acquiring the right of possession, though not in possession, may maintain the action. Ball v. Chadwick, 46 Ill. 28.

Even the owner may not forcibly enter. His remedy is in forcible detainer. Reeder v. Purdy, 41 Ill. 279.

The landlord may maintain the action where the tenant attorns to another person. Fortier v. Ballance, 5 Gilm. 41; Fusselman v. Worthington, 14 Ill. 135.

The forcible detainer act should receive a liberal construction. Jackson v. Warren, 32 Ill. 339; Wilburn v. Haines, 53 Ill. 207.

The ownership of public property by the county carries with it the right to its possession. Dahnke v. People, 57 Ill. App. 619.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This case is *novus hospes* in court, and therefore likely to go farther. The material facts are as follows:

Appellants, for ten years or more, have carried on, in Springfield, the business of making and selling abstracts of title, and kept continuously in the office of the recorder of deeds of Sangamon county a desk, chairs, bookcase and abstract books of their own, used in their said business. Hallihan regularly spent most of his time there when said

Hardin v. County of Sangamon.

office was open, making and selling abstracts for profit.   He there received orders for work, met his clients, and, being a notary public, prepared conveyances and took and certified acknowledgments.   He had no key to that office, nor any special arrangements with the recorder for such occupation of it; but the board of supervisors, at their September session, 1891, to settle a controversy which had arisen with a rival firm, adopted a resolution that "each of said firms be allowed room for one desk and one bookcase, as now located and used by them; also two representatives each in said office, and that neither of said firms be allowed to use a typewriter in said office."   To the adoption of this resolution, which was previously shown to him, Hallihan expressly consented, and continued to occupy accordingly, though the rival firm withdrew.   At their June session in 1895, the board of supevisors revoked this license, first, by a resolution of the 12th, ordering generally that no part of the county court house or grounds should be "allowed to be used by any one for the transaction of any private business whatever," and that the custodian of this property should "see that this order is strictly observed and enforced from this date;" and more especially by another of the 14th, reciting the preceding order and the fact of appellant's continued occupation, as stated, and directing them to remove from said office all their private property and belongings enumerated, extending it to all others in like case, and that the recorder and other county officers from that date should allow no person or party to locate in their respective offices any desk, chair, bookcase or book, or other private property not belonging to and a part of said offices, and that upon failure of the owner to comply with the order within ten days from that date, the sheriff should remove all such property.

Of these resolutions appellants had due notice, but paid no attention to them.   The committee on court house and grounds, of the board of supervisors, requested the recorder to remove their property, but he refused for the reason given, that he didn't believe Mr. Hallihan was interfering

with the public business in his office, and he was giving him no more privileges than he would willingly give any other citizen of the county, and had given to others.  No attempt to enforce the order of the recorder or sheriff having been made, the committee so reported to the board at its July session, 1895, and were thereupon directed to take such measures as might be necessary to that end, and authorized to employ counsel to assist the state's attorney therein.  Due notice and demand in writing was served upon each of the appellants to remove their said property and vacate and surrender possession of said room to the county, through said committee; and more than thirty days thereafter, they having refused so to do, this action of forcible detainer followed, which was submitted for trial by the court without a jury; and defendants being found guilty and a new trial denied, judgment was given for the plaintiff, awarding a writ of possession and costs.  Exceptions were duly taken and the record is brought here for review, on appeal.

No evidence was offered to contradict any of the facts above stated, which were substantially stipulated, but the testimony of appellant Hallihan added some particulars, perhaps not very material, as follows:

The recorder's office was open from eight to twelve and from one to six o'clock.  Having no key to it, he went there about a quarter after eight, and there spent pretty much all the time it was open, except when he went to other offices to look up judgments and taxes.  His desk was five or six feet long and about three in width; his book case about six feet high and eighteen inches square, was kept behind one of the index desks, and not occupying any space required for public records.  It was locked.  Only he and his son, who was in his employ, had a key to it.  He had no arrangement with the recorder for occupying any quarter of the office, nor ever assumed to occupy any particular space or part of it.  Neither of the recorders objected to his being there, as he was.

It is insisted for appellants that these facts fail to show.

Hardin v. County of Sangamon.

that when this action was brought appellee had any right of possession, or appellants any actual possession of the premises, both of which must be shown in order to maintain it; that "the only way known to the law to test the question sought to be raised here is to sue the recorder, if any person conceives himself injured, when the question can be tried on its merits and the recorder compelled to do what the law requires of him;" that the plaintiff, if anything has been done in the office not authorized by law, can file its bill and a decree be procured which will protect the rights of all parties; that the recorder "is always subject to the order or decree of the courts, who can compel the performance of his duties by mandamus or injunction, which remedies can be adjusted to the particular facts, while the remedy here invoked is summary, unbending and wholly unsuited to accomplish the end intended." And further, "that the very duties imposed upon the recorder, their nature and character, make it necessary for their proper performance, that he alone should have absolute control of the recorder's office, and that no other officers should have the right to say who should come into his office, how long they should stay and what they should bring with them;" that "the recorder, in the very nature of things, is the only person who can decide whether the public interests require that certain things should or should not be done in his office."

We are not prepared to concede the soundness or even the consistency of these positions. If the rightful control of the recorder over the room which is his office is indeed so exclusive and absolute as is thus claimed, discretion would seem to be so swallowed by power that while he continues to use it for that purpose a case can hardly arise upon his manner of so using it, or its use by him or his permission for other purposes, which a court could treat as an abuse and restrain or correct by mandamus or injunction against him.

It was admitted on the trial that the court house belonged to the county. It appropriated the room in question to the official uses of the recorder. It does not attempt nor intend by this proceeding to abridge his control of it for those uses,

to say who shall come into his office, how long they shall stay or what they shall or shall not bring with them. It has no controversy with him. But while fully conceding to him the right to all such use and control of the premises as are necessary, proper or naturally incidental to the performance of his official duties, it asserts, as against all other parties and other and distinct uses, such right of possession and control as attaches to and flows from its ownership of the court house, and its corporate duties imposed by law.

Was that right such as was sufficient to enable it to maintain this action? The statute makes and declares each county a body politic and corporate. R. S., Ch. 34, Sec. 22. Among the "powers" conferred upon it are: To "purchase and hold the real and personal estate necessary for the uses of the county;" to "sell and convey or lease any real or personal estate owned by the county;" and "to make all contracts and to do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers." (Sec. 24.) Being a corporation aggregate, it could possess, use, control and manage its property and funds, exercise its powers and perform its duties only through agencies prescribed or authorized by the law under which it was organized. It was accordingly provided that its powers as a corporation should be "exercised by a county board, to-wit: In counties under township organization (except the county of Cook) by the board of supervisors (Sec. 23); to which, among others, the 'powers' were given to take and have the care and custody of all the real and personal estate owned by the county, and to manage the county funds and business, except as otherwise specifically provided." (Sec. 25.) And among the duties imposed are the following: "To erect or otherwise provide, when necessary and the finances of the county will justify it, and keep in repair, a suitable court house, jail and other necessary county buildings, and to provide proper rooms and offices for the accommodation of the several courts of record of the county, and for the county board, county clerk, county treasurer, recorder, sheriff and the clerks of said courts, and to pro-

vide suitable furniture therefor; and to provide and keep in repair, when the finances of the county permit, suitable fire proof safes or offices for the county clerk, county treasurer, recorder, sheriff and clerks of said courts." (Sec. 26.)

In respect to these powers and duties the county board is the county, and their exercise and performance would seem to necessitate a continuing right of possession. But inde. pendent of them, such right would be presumed from ownership, until it was shown to have been divested of it by some adverse and valid claim, which could arise only by operation of law or contract of the county.

It is said that the sheriff, by virtue of section 14, chapter 125, which provides that "he shall have the custody and care of the court house and jail of his county, except as is otherwise provided," is in possession of the court house as a whole; that this provision, being later and applying specially to court houses and jails, modifies, as to them, those previously referred to, which give it to the county or board of supervisors as to county property generally; that the duties and functions of the board are all legislative, and being in session only a few times and for short periods each year, is unfit to discharge the duties of such custody and control; and if it had the possession or right to the possession of the court house or jail, then in case a mob should seize either, public business must be suspended until it should meet, make demand in writing of the mob for possession, and if refused, successfully maintain a suit for forcible entry.

A glance at the statute shows that the functions of the county and the board are largely executive. They buy, care for, lease, sell and convey real and personal property, make contracts, examine and settle accounts, appoint agents, erect buildings and keep them in repair, provide rooms, furniture and other facilities for the transaction of the business of county officers, and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers.

There is nothing in their constitution or methods of

proceeding that unfits ·them for the care and custody of a court house, more than in those of a board of directors of a railroad company to exercise a like power and perform like duties with reference to the most insignificant station house on its line. From a necessity common to all aggregate corporations they perform many of these duties through individual agents, some of whom are so exclusively qualified that they are designated and fixed by law—as the county clerk for some (Chap. 35, Sec. 10) and the sheriff for others—while still others are left to their own appointment, expressly authorized, as for the care and management of the county workhouse and county insane asylum (Chap. 34, Sec. 24), or impliedly from necessity or convenience; but all more or less under the immediate and binding directions of the board.

The statute gives to the sheriff the care and custody of the court house and jail of his county, " except as is otherwise provided." The legislature knew it was already provided that the county should take and have it, as to all the real and personal estate owned by it, and that for that purpose the board of supervisors was the county; that nearly all the members resided and did business at considerable distances from Springfield and met there only for short periods with long intervals; so that they could not, as a body, directly give to the court house or jail the constant oversight and particular care which the public interest required, and must do so by some sub-custodian. It knew also that the sheriff kept his office in the court house, constantly attended by him in person or by deputy having the same official power, and at the jail, usually near it, an assistant jailer under him and of his own appointment. (Chap. 75, Sec. 3.) In addition to these peculiar qualifications for the position, as conservator of the peace in his county he was required to "keep the same, suppress riots, routs, affrays, fighting, breaches of the peace, and prevent crime," and empowered to " arrest offenders on view;" and for these purposes to " call to his aid, when necessary, any person ,or the power of the county." (Chap. 125, Secs. 17, 18.) There-

fore the consequences supposed to be involved in the theory
of the county's possession, if a mob should seize the court
house, are not to be apprehended.    In fact and law they are
no more involved in that theory than in that of the sheriff's
possession; for in either case, as sheriff, he could prevent
them, but if he acted upon his right to possession, the demand
in writing and successful prosecution of an action for forcible
entry and detainer would be as necessary in the one as in
the other.    A custodian, as curator or janitor, of such build-
ings was indispensable, and for the reasons stated the
sheriff was most appropriately made such *ex officio*, but there
was no necessity, nor any reason, for any of the purposes of
his appointment, that he should supersede the owners in their
actual or legal possession.    In whatever he does, touching
the mere care of them, he is subject to and acts under the
express or implied authority of the county board, except as
to orders of the court he is attending where its convenience,
dignity or duty is immediately concerned, or such order is
expressly authorized by law, and never upon his own judg-
ment as of independent right.    Accordingly the statute
makes it the duty of the grand jury at each term to " visit
the jail and examine its condition   *   *   *   and make
report thereof to the court," and of the court to see that it
performs that duty.    Upon such report being made, however,
the court usually takes no action with reference to the
" condition " reported, but its clerk is required to transmit
a copy of it to the county clerk, who " shall lay the same
before the county board at its next meeting." (Chap. 75,
Secs. 26, 27.)    Ordinarily the action of the board is sufficient
to remedy any defect in the condition of the jail, whether
due to a want of proper care on the part of the sheriff or
any other cause; but since a considerable time may elapse
before its next meeting, and they have no power to remove
or punish him for disregarding their direction, it is made
the duty of the court also to inquire into its condition and
the treatment of prisoners, and for neglect of any of his
duties under the act it may make all proper orders against
him and enforce them by its process.    (Sec. 28.)

The law does not recognize any estate or interest of the sheriff, possessory or other, in the court house or jail. They are purely public buildings, belonging wholly to the county as a body corporate, dedicated to public uses only, in which, therefore, while so used, no other person, natural or artificial, private or official, can have any exclusive proprietary right. The sheriff's relation to them is only that of one employed and paid to take care of them for these uses, as a part of his official duty, and all the possession he has, being merely incidental to that part of his duty, is, in fact and law, the possession of the county.

This view harmonizes the two provisions of the statute, giving to the county and to the sheriff, respectively, the care and custody of this property, and allows to each its due effect. In Dahnke v. The people, 57 Ill. App. 619—which is nearer to this case than any other of which we are advised—it was said that "the custody and control which the county board is entitled to exercise under the authority of the constitution and statutes is such as attaches to and flows from the ownership of the court house by the county; that of the sheriff is such as attaches to and flows from the inherent powers and duties of his office at common law, and as recognized by the constitution and declared by the statutes, as the attendant upon the court and as the court's executive officer." And further, that "there is nothing inconsistent in the performance of such duties by the sheriff with the other duty of the county board to control and manage the property of the county and its affairs, and there is nothing necessarily antagonistic in the statutes that impose, in substantially the same language, the duty, upon both county board and sheriff, to have the custody and control of the court rooms of the county." In that case the difficulty was not so much in the law as in its application to a condition peculiar to the county of Cook, in which there were more courts, equal in dignity and jurisdiction and having terms at the same time, than court rooms provided or the county board had means to provide for their accommodation. They made an order assigning to a judge another court

room than the one he was occupying, and to which no other judge had a better claim by right or courtesy. Upon his refusal to make the change in compliance with such order, the board directed Dahnke, one of its employes, during a necessary adjournment of the court over an election day, and while an unfinished cause was on hearing before it, to change the locks on the doors of the court room and the judge's chambers and remove his property to the room so assigned to him. When he came to resume business pursuant to the adjournment and found the door closed, the sheriff demanded of Dahnke to open it, which he at first refused to do, but upon the sheriff's threatening to break in complied and admitted them to use the room as theretofore. The court then made an order imposing upon him a fine of $50 as for a contempt; upon which a writ of error was prosecuted. A majority of the Appellate Court held that the action of the board was outside of its authority, and that the facts brought the case within the range of the sheriff's duties as the executive officer of the court, the protector and preserver of its dignity and the enforcer of the peace and order of the rooms in which they are held, to " provide against the court rooms which have once been set aside for the use of the courts, from being closed against such use, and from intrusion therein to the obstruction of the court's business."

This is a necessary and recognized limitation of the board's " control " of that part of, the court house, occasional, temporary and for a specific public purpose which the board can not serve; but the question here presented, which is, whether the sheriff has such " possession " of the court house as to give him the sole right to maintain an action in his own name for a trespass to or forcible entry and detainer of it or any part of it, was not involved. Had it been, we are satisfied from the general views expressed in the several opinions, that the court would have held, as we hold, that he has not.

It is further claimed that if the sheriff has not, the recorder has, possession of the room here in question.

Upon what right, then, does this claim rest? Like the

sheriff he is neither the owner of the property nor the tenant, licensee or agent of the owner with respect to it; but a public officer, not appointed by the owner, but elected by the people of the county to be agent of the law for certain public purposes prescribed and limited by it. The county in its corporate capacity provided the room with furniture, books and stationery suitable for his use as such agent, and put or let him in for those purposes and those only. This appropriation of it was not a matter of contract, choice or will on its part, but of obligation imposed by the statute. The recorder's use and occupation of it, for the purposes stated, is therefore independent of the consent of the county as it also is of the authority of the sheriff or of the court. His right depends wholly upon the law which gives it, by imposing the obligation so to use and occupy it without regard to his will. But it extends no further than is necessary or naturally incidental to the performance of his official duties. Though he rightfully occupies and uses the room as his official workshop, he does not provide it for himself, pays no rent, makes no repairs, has no proprietary estate, right or interest in it, and is not even charged with the custody of it as property or the subject of property. Nor has he any interest in the proceeds of his work, nor can he fix the price of his services or refuse them to any who need and will pay the price fixed by law, for which he must account.

This special and limited use of a county room by a county officer is the actual possession of the county. It is only in some such way that the county can have it. The recorder does not need it to protect himself in his rightful use of the property. For should he be unlawfully deprived of that by a stranger the sheriff could at once restore it without process and by whatever of force should be necessary, or in case of his refusal or neglect to do so an action at law could be maintained in the name of the county; and if the county itself should wrongfully interfere with it, mandamus or injunction against the board would be his appropriate and sufficient remedy.

It is provided by statute that " all records, indices, abstract

· and other books kept in the office of any recorder, and all instruments filed for record therein shall, during office hours, be open for public inspection and examination; and all persons shall have free access for inspection and examination to such records, indices, books and instruments which the recorders shall be bound to exhibit to those who wish to inspect or examine the same ; and all persons shall have the right to take memoranda and abstracts thereof without fee or reward" (R. S., Ch. 115, Sec. 21); and this is the extent of the right of the public to use or occupy this room without the consent of the county, expressed or implied.   To this extent it is purely and exclusively public.

No one is by law authorized to occupy it or any part of it as his office for the regular and continuous transaction of his private business, which is just what we understand from the evidence appellants have substantially done and are doing, against the will of the county.   They are there every business day and through all business hours, being out only as they would and must be from an office elsewhere. · They are there to make abstracts of all the records affecting the title to all the lots and tracts of land in the county, without regard to any present actual interest in them, either in their own right or as agents, but to be prepared for business that may or may not come to them.   There they keep their own private books, blanks, furniture and other means required for the transaction of their private business as abstracters and conveyancers, and there they transact it just as they would in any office owned or rented by them for that purpose.   They have no other so equipped or so regularly used.

Upon the admitted facts, it is idle to insist that they use it only as all others may, under the statute, or as any other actually does.   They make it their private office, no less in fact than if they advertised it as such in the newspapers, or put up a sign to that effect on the door; and this is actual "possession," at least of so much as is thus used.

But it is said they have "never claimed any sort. of control over the whole or any part of the recorder's office." By this is meant only that the recorder himself does not

object, but consents to their using it as they do, which, for reasons already stated, we deem immaterial. The question of right is between them and the county, which does object, and which they resist and defy.

It is further said that they actually occupy only a part of the room, and if wrongfully, as against the county, the evidence must identify that part, and judgment be given for possession of that part only; and, therefore, that the holding of the fourth proposition of law for appellee, and the judgment here given for the whole room in accordance with it, were in the teeth of the statute and the decisions of the Supreme Court.

The statute is that "if it shall appear on the trial that the plaintiff is entitled to the possession of the whole of the premises claimed, he shall have judgment and execution for the possession thereof, and for his costs. If it shall appear that the plaintiff is entitled to the possession of only a part of the premises claimed, the judgment and execution shall be for that part only, and for costs, and for the residue the defendant shall be found not guilty." R. S., Ch. 58, Sections 13, 14. Whether the judgment and execution should be for the whole or only a part of the premises claimed, if either, is thus made to depend not on the extent of the defendant's actual possession, but on that of the plaintiff's right of possession. We are not advised of any decision or *dictum* of the Supreme Court to the contrary. Appellee claimed the whole, and it appeared to the court on the trial that it was entitled to the possession of it, as against appellees. It so appears to us, and we hold the judgment was proper.

Its execution need not disturb the recorder, nor interfere with the common right of appellants to have free access to the records, indices, books and instruments filed or kept by the recorder in his office, for inspection, examination and taking memoranda and abstracts thereof. The sheriff will dispossess the defendants and restore the county to the possession claimed, by removing from the office the private property, by the means and use of which they now have it, as he would if they were keeping a lunch counter there by

removing the counter, provisions, safe, stools and other furniture used in keeping it.   He will encounter no more difficulty in identifying the property to be removed than he would in executing a fieri facias.

We think the evidence clearly brings the case within the scope of this remedy as extended by the act of 1872, section 2, clause 2.   Thomasson v. Wilson, 146 Ill. 384 (392). The judgment will be affirmed.