James Wade, Sheriff in and for the County of Pike in the State of Illinois, Plaintiff-Appellant, v. The County of Pike in the State of Illinois, Marshall Roberts, Supervisor of Assessments in and for the County of Pike in the State of Illinois, The Board of County Supervisors of Pike County, Illinois, and Glenn Secrest, Chairman of the Board of County Supervisors of Pike County, Illinois, Defendants-Appellees.

Gen. No. 10,980.

Fourth District.

January 23, 1969.

Hutchens & Mann, of Winchester (Richard E. Mann, of counsel), for appellant.

Cecil J. Burrows, State's Attorney, of Pittsfield, and Grigsby & Irving, of Pittsfield (Brice Irving, of counsel), for appellees.

SMITH, J.

Who's who in Pike County who can tell whom what part of the courthouse he may occupy? Specifically, is "who" the Sheriff or the County Board of Supervisors? The Circuit Court said it was the Board and the Sheriff appeals. Courtrooms are not involved.

The Sheriff, as such, is a very ancient officer. If antiquity were our sole criterion he would win hands down,

for as to him the Board of Supervisors is a very modern invention indeed.

True, section 14 of the Sheriffs Act (§ 14, c 125, Ill Rev Stats 1967) when read with section 24 might seem to point oppositely. It says the Sheriff, "shall have the custody and care of the courthouse and jail of his county, except as is otherwise provided," and section 24 reads that when he goes out of office "he shall deliver to his successor . . . possession of the courthouse and jail of his county . . . ." However, before we come to any quick conclusions we must read these sections in the context of the statute concerning the Board.

Section 24 of the Counties Act (§ 303, c 34, Ill Rev Stats 1967) where pertinent, provides:

"Each county shall have power—
"First—To purchase and hold the real and personal estate necessary for the uses of the county, . . . ;" and Section 26 (§ 432) says:
"It shall be the duty of the county board of each county:
"First—To erect or otherwise provide when necessary, and the finances of the county will justify it, and keep in repair, a suitable courthouse, jail and other necessary county buildings, and to provide proper rooms and offices for the accommodation of the county board, State's attorney, county clerk, county treasurer, recorder and sheriff, and to provide suitable furniture therefor. . . ."

Both parties find solace in Dahnke v. People, 168 Ill 102, 48 NE 137, as well they might, but a close rereading we think favors the Board. In Dahnke the precise question was: Who was who in Cook County who could tell judges to sit there? It's a quaint and interesting opinion. Even in 1894 there were more judges than courtrooms. In an attempt at solution, the County Board "assumed" the assignment and it came to pass that a

certain judge holding court in a given room left to hold court elsewhere, and a second judge took possession— even though it had not been "assigned" to him by the Board. While such judge was using it, it was assigned to still another, though he seems to have tarried when it came to removing himself. In any event, he adjourned court one evening (in the preempted courtroom) for the day after tomorrow, and in the interim, Dahnke, acting for the Board, changed the lock on the door. When the day after tomorrow arrived, the judge, the sheriff and his bailiffs, parties, their attorneys and witnesses were denied admittance. As one might have thought, Dahnke was held in contempt. His appeal was not a success. Our Supreme Court held that the Board lacked power "to assign the courtrooms in the courthouse," and quoted with approval the view expressed by the locked-out judge:

> " 'As real estate simply, the courthouse is in the care and custody of the county board. As a court-house, it is in the custody and care of the sheriff. As real estate the county board controls the title, and keeps the building and its furniture in repair. As a courthouse, the sheriff who is himself an officer of the court, guards and cares for it. Should the building cease to be a courthouse, it would revert to the care and custody of the county board like the other real estate. . . . The custody of the courthouse by the sheriff is the custody of an officer of the courts, who is subject to their control. In other words, it is the custody of the courts themselves. The sheriff himself has no power to control the use of the court-rooms by the courts or judges thereof. . . . ' "

and the Appellate Court:

> " 'The custody and control, which the county board is entitled to exercise, under the authority of the

constitution and the statutes, are such as attach to and flow from the ownership of the courthouse by the county; those of the sheriff are such as attach to and flow from the inherent powers and duties of his office at common law, and as recognized by the constitution and declared by the statutes, as the attendant upon the court, and as the court's executive officer.' (Dahnke v. People, 57 Ill App 619.)"

We cannot view this case as authority for the Sheriff, as he thinks we should, as courtrooms qua courtrooms are something quite different from just plain rooms. We read this case to mean that if a room is a "courtroom," it is the judges and no one else "who" determine to whom it will be assigned. That Dahnke's (and the Board's) quest for purgation went unrequited certainly does not mean that the Sheriff has the power to assign either courtrooms or just plain rooms. Dahnke stands for the limited proposition that only judges can shove judges around. This is a far cry from saying that Sheriffs can designate the lodgement for others in the courthouse.

"Custody and care" is not the same as providing "proper rooms and offices." "Custody and care" gives to the Sheriff only the right to possess the courthouse in a custodial capacity. It is with the County Board where ultimate power lies. Hardin v. County of Sangamon, 71 Ill App 103, is apropos—though a mere Appellate Court case and earlier than Dahnke. There the County Board sought to eject an abstracter. We quote:

"A custodian, as curator or janitor, of such buildings was indispensable, and for the reasons stated the sheriff was most appropriately made such ex officio, but there was no necessity, nor any reason, for any of the purposes of his appointment, that he

429

should supersede the owners in their actual or legal possession."

And

"The law does not recognize any estate or interest of the sheriff, possessory or other, in the courthouse or jail. They are purely public buildings, belonging wholly to the county as a body corporate, dedicated to public uses only, in which, therefore, while so used, no other person, natural or artificial, private or official, can have any exclusive proprietory right. The sheriff's relation to them is only that of one employed and paid to take care of them for these uses, as a part of his official duty, and all the possession he has, being merely incidental to that part of his duty, is, in fact and law the possession of the county."

Accordingly the Circuit Court was correct in declaring that it is the Board "who" have the power to control occupancy of those lawfully entitled to such.

The order appealed from is affirmed.

Affirmed.

TRAPP, P. J. and CRAVEN, J., concur.