THE COUNTY OF De KALB, Plaintiff-Appellee, v. ROBERT I. SMITH et al., Defendants-Appellants (Fabian S. Aita, as Trustee, et al., Defendants).

Second District   No. 2—90—0323

Opinion filed May 15, 1991.

776

Scott A. Kracen, of Sycamore, for appellants.

Michael P. Coghlin, State's Attorney, of Sycamore (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, and Barbara A. Chasnoff, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendants, Robert I. Smith and his wife, Betsy W. Smith, contest in this appeal the authority of the County of De Kalb to condemn two adjoining parcels of land owned by them in the county seat, Sycamore, Illinois, for parking lot purposes. The remaining defendants listed have

secondary mortgage or trust rights in the subject property but are not involved in this appeal. After the Smiths' amended traverse and motion to dismiss was denied, the cause proceeded to jury trial, and judgment was entered on the jury's verdict finding $175,000 to be just compensation for the property taken. The Smiths do not challenge the verdict, only the court's order denying their amended traverse and motion to dismiss.

They contend (1) the county did not have the authority to condemn the property for the purpose of constructing a parking lot; (2) the stated purpose for the property in the petition for condemnation is not the same as the purpose set forth in the underlying county board resolution; (3) the stated purpose for the property in the petition for condemnation is a private, not public, use; (4) the underlying resolution did not specify the intended use of the property was for construction of a parking lot to provide additional parking spaces; and (5) the county failed to present sufficient evidence of necessity for the taking at the hearing on the motion to dismiss.

Because we find it dispositive, we address only the first issue raised by the Smiths: whether the county had the authority to condemn their property for parking lot purposes. We conclude below it had no such authority. Accordingly, we vacate the judgment on the jury's verdict and remand the cause for entry of a judgment dismissing the petition for condemnation.

The Smiths' argument is this: any power of condemnation the county may have derives solely from enabling legislation which must be strictly construed in their favor as property owners; there is no enabling legislation which gives the county the authority to condemn, rather than purchase, private property for parking lot purposes; this lack of authority to condemn is fatal to its petition for condemnation. We agree.

■■ ■ It is well established that the power to exercise eminent domain is inherent in the State. (*Department of Public Works & Buildings v. Schlich* (1935), 359 Ill. 337, 345.) Its power to condemn is limited by the constitution to the taking of private property only where public necessity requires it and then only by the payment of just compensation. (Ill. Const. 1970, art. I, §15.) In contrast to the inherent eminent domain powers of the State, the power of any corporation or department of the government to exercise eminent domain must be specifically conferred by legislative enactment. (*Schlich*, 359 Ill. at 345; *Department of Public Works & Buildings v. Ryan* (1934), 357 Ill. 150, 154; *Village of Long Grove v. First National Bank* (1987), 164 Ill. App. 3d 253, 255.) A county is a body politic and corporate (Ill. Rev. Stat. 1989, ch. 34, par. 5—1001), "a political subdivision of the territory of the State, organized

for the convenient exercise, locally, of such powers of the government as may be delegated to it" (*City of Edwardsville v. County of Madison* (1911), 251 Ill. 265, 267). Whether a particular statute specifically confers the power of eminent domain is within the province of the court to decide as a question of law (*Long Grove*, 164 Ill. App. 3d at 255). Before submitting to the jury the question of just compensation, the court must determine whether a right of condemnation in a particular case exists. (*City of Chicago v. Jewish Consumptives Relief Society* (1926), 323 Ill. 389, 396.) Because this determination is a matter of law, the scope of our review is independent of, not deferential to, the decision of the trial court. *People ex rel. Edgar v. Curley* (1989), 188 Ill. App. 3d 37.

In an effort to secure additional parking space in proximity to its existing courthouse, public safety building and administration building in Sycamore, the county of De Kalb sought to purchase five nearby parcels of property including the two owned by the Smiths. Agreement with the owners of three of the parcels was reached, but the Smiths declined to sell the properties at 200 and 206 North Main, which are located kitty-corner from the courthouse to the northeast. The property at 200 North Main, formerly the site of a gas station, is used for an automobile dealership. The property at 206 North Main is the site of the Smiths' real estate office. The building at that address also contains three apartment rental units.

On February 22, 1988, the county board passed a resolution directing the De Kalb County State's Attorney to file condemnation proceedings to acquire the two Smith parcels. Therein it noted that there was "an immediate need to alleviate parking and building problems in and around the courthouse complex," that "repeated attempts to negotiate in good faith for the acquisition of the two [Smith] parcels in question have been unsuccessful," and that the land in question "is essential to accommodate parking needs of all of the citizens of De Kalb County."

The county's subsequently filed petition for condemnation alleged its authority to acquire the parcels by eminent domain to be "section 303— 1 [*sic*—section 24(1)]" and "section 432 [*sic*—section 26]" of "An Act to revise the law in relation to counties" (Counties Code or the Code) (Ill. Rev. Stat. 1987, ch. 34, pars. 303(1), 432). Those sections are presently codified as sections 5—1005 and 5—1106 of the Code (Ill. Rev. Stat. 1989, ch. 34, pars. 5—1005, 5—1106) and will be referred to herein as such inasmuch as the language pertinent here is identical.

In relevant part, section 5—1005 provides:

"Each county shall have power:

1. To purchase and hold the real and personal estate necessary for the uses of the county ***." Ill. Rev. Stat. 1989, ch. 34, par. 5—1005.

In relevant part, section 5—1106 provides:

"It shall be the duty of the county board of each county:

First—To erect or otherwise provide when necessary, and the finances of the county will justify it, and keep in repair, a suitable court house, jail and other necessary county buildings ***." Ill. Rev. Stat. 1989, ch. 34, par. 5—1106.

The county argued below, as it does here, that parking is a necessary adjunct to those buildings which it has a duty to provide under section 5—1106 and that it has the duty and power to provide by eminent domain a court complex, including parking, when it is necessary. In support, it cites *County of Mercer v. Wolff* (1908), 237 Ill. 74, and *People ex rel. Director of Finance v. YWCA* (1981), 86 Ill. 2d 219.

The Smiths distinguish *Mercer* and *YWCA* and—following an exhaustive list of over 200 specific statutory grants of condemnation power by the legislature to State agencies, to the United States government, to counties, townships, municipalities, private corporations and individuals—conclude the State knows how to grant the specific power of condemnation when it so chooses. Not only because the legislature did *not* specifically grant the county the power to condemn property for parking lot purposes, but also because it did specifically provide the county with powers relative to parking facilities as discussed below, the Smiths contend the statutory sections set forth in the county's petition for condemnation did not confer upon it the power to condemn their property for parking lot purposes. As such, the county's petition was fatally defective and the court erred in denying their traverse and motion to dismiss.

In *County of Mercer v. Wolff*, the county resolved to build a jail, and, unable to agree with the owners of the selected site on the compensation to be paid, it filed a petition for condemnation. A jury fixed compensation at $1,200 for each of the two owners, Wolff and Prentiss. Wolff, and the owner of an adjoining parcel whose cross-petition for consequential damages was found to have been properly dismissed, appealed. Wolff contended the county had no authority to acquire by condemnation property on which to build a jail.

Referring to the same sections of the Code relied upon by the county in the instant cause (codified at that time as sections 24 and 26 of chapter 34 of the revised statutes), and, noting the imperativeness of the county's duty to provide "a suitable court house [*sic*], jail and other necessary county buildings," the court in *Mercer* found the county could

avail itself of section 2 of the Eminent Domain Act. That section, present-day section 7—102 of article VII of the Code of Civil Procedure (the Eminent Domain Act), provides that where the right to construct or maintain, *inter alia*, "any *** public work or improvement" has been conferred by general law upon any corporate authority and the compensation to be paid for the property sought to be appropriated cannot be agreed upon, it is lawful for the party authorized to construct the public work to apply to have the compensation assessed in the manner provided by the Act. See Ill. Rev. Stat. 1989, ch. 110, par. 7—102.

The "imperativeness" of the county's duty to provide a jail was pivotal to the court's decision in *Mercer* that the county could avail itself of eminent domain proceedings to have the compensation assessed. That same imperativeness is not present here. It is clear from the language of the resolution and petition to condemn that the county has already provided a suitable courthouse, jail and other necessary county buildings. The power of eminent domain is being invoked here by the county to take private property against the will of its owners because of "an immediate need to alleviate parking and building problems in and around the courthouse complex" and because "the land is essential to accommodate the parking needs of all of the citizens of De Kalb County," and because the county "is, and will be, engaged in the construction of parking facilities which will be used by the petitioner and its employees in conjunction with the operation of its existing courthouse, Public Safety Building and Administration Building."

██ The county has pointed to no statute which *requires* it either to provide parking facilities or to alleviate a shortage of same in connection with its imperative *duty* to provide the types of county buildings referred to in section 5—1106 of the Code. We do not disagree that parking seems to be a reasonable adjunct to the county's duty under section 5—1106 to provide such county buildings by eminent domain. These buildings already exist, however, and we are bound to construe strictly laws purporting to authorize the taking of private property for public use since they are in derogation of the rights of the citizens. (*YWCA*, 86 Ill. 2d at 232-33; *City of Oakbrook Terrace v. La Salle National Bank* (1989), 186 Ill. App. 3d 343, 348.) We decline to read section 5—1106 as placing an imperative duty on the county to provide parking in connection with existing county buildings.

Nothing in *YWCA* convinces us otherwise. In that case, parking facilities apparently were to be an integral part of the court complex plan at issue there. (*YWCA*, 86 Ill. 2d at 239.) Without specifically being presented with or addressing the question of whether private property for parking facilities to be used in conjunction with the court complex could

be acquired by a county by the power of eminent domain, the court in *YWCA* determined that there was no substantial evidence of need for that portion of the property being sought for the circuit court's use (which included the greater part of the parking facilities) and that the State's petition attempting to take an entire block in downtown Springfield should have been dismissed because it was an attempt to take a " 'grossly excessive' " amount of land. *YWCA*, 86 Ill. 2d at 240.

■ As the Smiths cogently argued below, and do here as well, the legislature has otherwise provided the county with the power "[t]o *purchase and hold* real estate for the construction and maintenance of [nonrevenue producing] motor vehicle parking facilities *for persons using county buildings*" (emphasis added) (Ill. Rev. Stat. 1989, ch. 34, par. 5—1005(17)), and any county is authorized to "[o]wn, construct, equip, manage, control, erect, improve, extend, maintain and operate [revenue producing] motor vehicle parking [facilities] *** and *to purchase the real estate to be used for parking facilities*, as the county board finds necessary" (emphasis added) (Ill. Rev. Stat. 1989, ch. 34, par. 5—11001(a)). In contrast, municipalities have been specifically granted the authority to acquire off-street parking facility sites by condemnation under the power of eminent domain. (Ill. Rev. Stat. 1989, ch. 24, pars. 11—71—1(a), (d).) The legislature's specific grant of authority to the county to purchase real estate for parking facilities for persons using county buildings necessarily carries the implication it does not have the authority to acquire such real estate by condemnation under the power of eminent domain. Without a specific grant of authority, the county had no right of condemnation. *Department of Public Works & Buildings v. Neace* (1973), 13 Ill. App. 3d 982, 984.

■ We conclude the county did not have the authority under sections 5—1005 and 5—1106 to condemn the Smiths' property for parking lot purposes and the Smiths' traverse and motion to dismiss should have been granted.

The circuit court's judgment on the jury's verdict is vacated, and the cause is remanded for entry of an order dismissing the county's petition for condemnation.

Vacated and remanded.

WOODWARD and INGLIS, JJ., concur.