PAMELA O'CONNOR, Plaintiff-Appellant, v. THE COUNTY OF COOK, Defendant-Appellee.

First District (1st Division)   No. 1—02—0546

Opinion filed March 10, 2003.

Mary Ann Pohl, of Mary Ann Pohl & Associates, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr.,

John A. Ouska, and Peter Zaper, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff-appellant Pamela O'Connor (plaintiff) appeals from the trial court's orders granting summary judgment to defendant-appellee County of Cook (defendant) and denying her motion to reconsider. Plaintiff asks that we reverse and vacate these orders, and remand for further proceedings on the merits of her cause. For the following reasons, we affirm.

## BACKGROUND

The following facts are taken from depositions included in the record on appeal. On March 8, 1999, plaintiff, who is a Chicago police officer, arrived at the criminal court building at 26th Street and California Avenue in Chicago where she was scheduled to testify in a court case. She parked her car on the top floor of the parking garage located across the street from the court building. As she approached the elevator enclosure to exit the garage, she climbed over a mound of snow that had been plowed and piled near the door to the enclosure. In so doing, she slipped and fell. Plaintiff broke her ankle and was taken to the hospital, where she eventually underwent two surgeries.

Plaintiff filed a complaint at law against the City of Chicago, the City of Chicago Building Commission and defendant, alleging that all three entities were negligent in failing to maintain the parking garage in a reasonably safe condition. The City of Chicago and the City of Chicago Building Commission filed separate motions to dismiss under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1998)) (Code), both asserting that they did not own, maintain or control the parking garage. By agreed order, the court granted the City of Chicago's motion, and plaintiff voluntarily dismissed the City of Chicago Building Commission from this action. The case against defendant continued, and in its amended answer to plaintiff's complaint, defendant admitted that it owns and operates the parking garage.

In his deposition, Lawrence Wozniak testified that he is the head building custodian of the criminal court building and that he is employed by the Cook County sheriff (Sheriff). He averred that his responsibilities include the supervision of snow removal by his custodial staff from the entire court "complex." He described the complex as encompassing the court building, the nearby administrative building, the parking lots and the parking garage across the street. Corroborating this was the deposition testimony of Joseph Martin and Floyd Crumpton, members of the custodial staff. Martin testified that

he is employed by the Sheriff's office under Wozniak, his supervisor. Martin described that his responsibilities as a custodian include snow removal and that he is the head of the crew of custodians responsible for this task. Martin stated that while his crew removes snow from the criminal court building, the parking lot and the first floor of the parking garage across the street, he is one of two custodians in charge of driving the snow plow truck that removes snow from the top floor of the parking garage. Crumpton testified that he too is employed by the Sheriff's office. He averred that he is the other custodian in charge of driving the snow plow. Crumpton testified that as an employee of the Sheriff's office, he is responsible for plowing the "complex" at the criminal court building, which he described as including the top floor of the parking garage across the street.

Defendant filed a motion for summary judgment pursuant to section 2—1005 of the Code (735 ILCS 5/2—1005 (West 1998)), contending in part that it was not the proper defendant in this cause of action because, although it owns the parking garage, snow removal is the responsibility of the Sheriff and defendant is not responsible for the actions of the Sheriff's employees. On September 6, 2001, the trial court issued its memorandum and order granting defendant's motion. The court compared section 3—6017 of the Counties Code (55 ILCS 5/3—6017 (West 1998)), which charges the Sheriff with the "custody and care of the courthouse and jail," to section 5—1106 (55 ILCS 5/5—1106 (West 1998)), which charges defendant with keeping "in repair, a suitable courthouse, jail and other necessary county buildings," and determined that snow removal constitutes "custody and care." Relying on *People ex rel. Walsh v. Board of Commissioners*, 397 Ill. 293 (1947), and *Moy v. County of Cook*, 244 Ill. App. 3d 1034 (1993), the court concluded that snow removal "does not fall within the scope" of defendant's responsibilities but, rather, those of the Sheriff, and accordingly, defendant was not a proper party to this cause of action.

Plaintiff filed a motion to reconsider the court's order granting summary judgment in favor of defendant. The trial court denied this motion on February 6, 2002.

## ANALYSIS

Plaintiff seeks the reversal and vacation of both the trial court's order granting summary judgment in favor of defendant and its order denying her motion to reconsider. We review her contentions as to each order separately, beginning with the grant of summary judgment.

■ Defendant filed its motion for summary judgment pursuant to section 2—1005 of the Code. Under that section, summary judgment is to be granted "without delay if the pleadings, depositions, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2—1005 (West 2000); accord *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001); see also *In re Estate of Hoover*, 155 Ill. 2d 402, 410-11 (1993) (court is to construe the pleadings, affidavits, depositions and admissions strictly against moving party and liberally in favor of opponent of summary judgment motion). While summary judgment has been called a "drastic measure," it is an appropriate tool to employ in the expeditious disposition of a lawsuit in which " 'the right of the moving party is clear and free from doubt.' " *Morris*, 197 Ill. 2d at 35, quoting *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). We review the grant of summary judgment under a *de novo* standard. See *Morris*, 197 Ill. 2d at 35. We also note for purposes of this appeal that this cause involves statutory construction and interpretation. These are questions of law and, just as the grant of summary judgment, are subject to *de novo* review on appeal. See *Choi v. Industrial Comm'n*, 182 Ill. 2d 387, 392 (1998).

■ The arguments presented on appeal by both parties bring into contention two statutory provisions pertaining to the maintenance of the county courthouse and jail, namely, section 3—6017 dealing with duties of the Sheriff and section 5—1106 dealing with the duties of the county. We include the text of these provisions here at the outset. Section 3—6017 states:

"Sheriff custodian of courthouse and jail. He or she shall have the custody and care of the courthouse and jail of his or her county, except as otherwise provided." 55 ILCS 5/3—6017 (West 1998).

Section 5—1106 states, in relevant part:

"County offices, equipment and expenditures. It shall be the duty of the county board of each county:
\*\*\* To erect \*\*\* and keep in repair, a suitable court house, jail and other necessary county buildings." 55 ILCS 5/5—1106 (West 1998).

Plaintiff contends that the trial court erred in granting summary judgment to defendant because, under the provisions of section 5—1106, defendant county is the proper party to her cause of action. Plaintiff argues that, based on a comparison of the plain language of these statutory sections, it is clear that the Sheriff's custodial duties do not extend to the parking garage where she was injured. Plaintiff asserts that it is defendant that is responsible for maintaining the garage based on the language of section 5—1106 and its admission in its answer to her complaint that it owns and operates the garage. Thus, plaintiff concludes that she appropriately named defendant as the proper party in her cause. We disagree and find that the trial court's grant of summary judgment was proper.

Under *Walsh*, upon which the trial court relied, it is clear that the Sheriff, and not defendant county, would have exclusive custodial control over the courthouse and jail premises. In *Walsh*, the sheriff sought to prevent the county board from usurping his power to select and appoint a janitorial staff to care for and perform services in those areas "in and about the county courthouse and the county criminal court building," "such as engineers' services, operating elevators, sweeping floors, washing windows, and other similar janitorial duties." *Walsh*, 397 Ill. at 294. In deciding who bore responsibility for the care of these areas and the performance of these duties, our supreme court conducted a historical review of case law and statutes to compare the powers and duties of the sheriff and the county. The court reflected that it had long been established that the sheriff is charged with those custodial duties affecting the county courthouse and jail. See *Walsh*, 397 Ill. at 296-97. These duties had been part of the sheriff's powers assigned to him at common law and codified by early statute using the same words now used in section 3—6017. See *Walsh*, 397 Ill. at 296-97 (referring to section 14 of "An Act to revise the law in relation to sheriffs" (Ill. Rev. Stat. 1945, ch. 125, par. 14), which tracks the same language of current section 3—6017). From this, the *Walsh* court concluded that custodial duties affecting the courthouse were the exclusive province of the sheriff, including the power to hire a janitorial staff to assist him in these duties. See *Walsh*, 397 Ill. at 300.

This conclusion is further supported by the *Walsh* court's references to *Dahnke v. People*, 168 Ill. 102 (1897), and *Hardin v. County of Sangamon*, 71 Ill. App. 103 (1892). The *Walsh* court noted that *Dahnke* and *Hardin* resolved any apparent conflict in those statutes that were the precursors to sections 3—6017 and 5—1106, as both those cases held that any such conflict between the authority of the county and that of the sheriff to exercise custodial power over the courthouse and grounds was to be resolved in favor of the sheriff. See *Dahnke*, 168 Ill. at 111-12, 114 (" '[a]s real estate, the county board controls the title, and keeps the building and its furniture in repair. As a court house, the sheriff *** guards and cares for it' "); *Hardin*, 71 Ill. App. at 114, quoting *Dahnke v. People*, 57 Ill. App. 619, 626 (1895) (the custodial powers of the county flow only from its ownership rights over the property, but those of the sheriff to care for the property arise from his inherent powers at common law and his traditional role " 'as the attendant upon the court and as the court's executive officer' "; this view "harmonizes the two provisions *** giving to the county and to the sheriff, respectively, the care and custody of this property, and allows each its due effect"); accord *County of McDonough v. Thomas*, 84

Ill. App. 408, 412 (1899) (sheriff has the power and duty to care for the buildings and grounds, and "there is nothing *** showing a legislative intent to curtail the common law powers of the sheriff as custodian of the court house and jail").

Plaintiff, however, contends that *Walsh* limits the sheriff's custodial authority to those county buildings involved in that case, namely, the county courthouse and the criminal court building, which are specifically designated in section 3—6017, but does not extend to any parking facility that exists as a separate structure. See *Walsh*, 397 Ill. at 304. Contrary to plaintiff's interpretation of *Walsh*, that case reflects a broader and more extensive scope of custodial control to be exercised by the sheriff, encompassing not only the courthouse and jail, but also the grounds surrounding and belonging to these physical buildings. For example, the *Walsh* court specifically described the sheriff's "janitorial duties" as the performance of services *"in and about* the county courthouse and the county criminal court building," thus indicating that the surrounding grounds of those buildings are encompassed under the scope of the sheriff's custodial duties. (Emphasis added.) *Walsh*, 397 Ill. at 294. Also indicative of that court's broader interpretation of the scope of the sheriff's custodial duties is its reliance on *County of McDonough*, which affirmed the exclusive power of the sheriff to employ someone to perform the "usual duties of a janitor *** for the court house and grounds," including "to keep said court house properly cleaned, attend to the heating plant, keep the lawn mowed, [and] ice and snow cleaned from the walks." *County of McDonough*, 84 Ill. App. at 409; see also *Moy v. County of Cook*, 244 Ill. App. 3d 1034, 1038-39 (1993).

■ Based on the foregoing, it is clear to us that, contrary to plaintiff's contention here, the Sheriff's custodial duties involve more than simply the bricks and mortar of the county courthouse itself. Rather, they extend to a duty of custodial care over those areas "in and about" the courthouse, including its "grounds," which would also encompass structures that subserve the needs of the courthouse and jail. See *Walsh*, 397 Ill. at 294; *County of McDonough*, 84 Ill. App. at 409. This interpretation is consistent with the *de facto* responsibilities that were unquestionably assumed by the Sheriff's office in the instant case. The record presented undisputed testimony that the Sheriff assumed responsibility for the custody and care of the parking garage located across the street from the criminal court building, which is the same complex encompassed in the *Walsh* decision. Wozniak, Martin and Crumpton each testified in their respective depositions that they are custodians employed by the Sheriff, not by defendant, and that they exercise their duties under the authority of the Sheriff's office.

Likewise, each testified that one of their responsibilities as custodians is the removal of snow from the top floor of the parking garage. In addition, head custodian Wozniak and Crumpton testified that the Sheriff requires them to remove snow from the entire court "complex," which they both specifically described as including not only the courthouse and the jail, but also the nearby court administrative building, the parking lots and the parking garage.

Furthermore, there is undisputed testimony in the record that the internal staff of the parking garage was comprised of employees of the Sheriff and not of defendant county, and that the garage was maintained specifically for use in connection with the courthouse. Crumpton testified that the parking garage subserves the needs of those who have business with the court, including "different officers like State's [A]ttorneys or public defender[s], and [their] drivers." Wozniak corroborated this. Moreover, when posed with the question of what procedure is to be followed were someone injured on the top floor of the parking garage or were a safety hazard to exist there, Wozniak explained that such an incident is to be reported to the Sheriff's office. Wozniak further testified that he as head custodian employed by the Sheriff, rather than any employee of defendant, would then assume control over the situation, including filing an incident report and employing his staff to correct the problem. Thus, the evidence in the record is undisputed that it was the Sheriff exclusively who in fact exercised custodial responsibility over the maintenance and care of this facility as part of the court complex. This undisputed evidence is fully consistent with and supportive of the interpretation that the Sheriff's custodial care of the courthouse and jail as dictated in section 3—6017 includes its custodial care of the parking garage as an appurtenance that serves the needs of those buildings and all who enter them.

Having found that custodial responsibility for snow removal from the parking garage resides exclusively with the Sheriff, there is little question that defendant county will not thereby bear any vicarious liability for the acts and omissions of the Sheriff and his staff. See *Moy*, 244 Ill. App. 2d at 1038-39. In *Moy*, the court held that because there is no employment relationship between the sheriff and the county since the sheriff is an elected official, the county could not be held vicariously liable for the custodial duties of the sheriff even though the county owns the property upon which the sheriff performs his custodial duties. See *Moy*, 244 Ill. App. 3d at 1038-39 (sheriff is independent official and as there is no agency relationship between county and sheriff, county could not be held liable for custodial incident at county jail); accord *Biggerstaff v. Moran*, 284 Ill. App. 3d

196, 199 (1996) (county "has no authority to control the sheriff's office"); *Wade v. County of Pike*, 104 Ill. App. 2d 426, 429 (1969) ("custody and care" given to sheriff under section 3—6017 gives him custodial capacity, not the county).

Plaintiff relies heavily on *County of De Kalb v. Smith*, 213 Ill. App. 3d 775 (1991), for the proposition that because defendant is not required under statute to provide a parking garage for those using the courthouse and jail, the garage cannot be considered a necessary adjunct to the courthouse and jail and, thus, the Sheriff's custodial duties cannot extend to the garage. *De Kalb*, however, does not stand for this proposition and is distinguishable from the instant case. *De Kalb* was a condemnation case in which the county sought to exercise its powers of eminent domain over parcels of land owned by private citizens in order to build a parking lot for the county courthouse complex, which included the courthouse, public safety building and administration building. The issue was whether the county had the authority to condemn the property under its statutory powers, including section 5—1106. See *De Kalb*, 213 Ill. App. 3d at 777. The court held that the county did not have the power to condemn under the particular facts of that case because the taking of the property to construct a parking lot was not necessary. However, contrary to plaintiff's contention, the holding in *De Kalb* is inapplicable to the instant case.

The *De Kalb* court's determination as to whether the construction of a new parking lot for the courthouse was necessary was made in a condemnation context. The court reviewed the relationship between the county's powers under section 5—1106 (55 ILCS 5/5—1106 (West 1992)) to "erect *** and keep in repair[ ] a suitable court house, jail and other necessary county buildings" and section 5—1005 (55 ILCS 5/5—1005 (West 1992)), which involved the county's power to purchase and hold real estate. The requirement of "necessary" in a condemnation context under the language of section 5—1106 for a county to properly effect a taking, as presented in *De Kalb*, is not applicable to the Sheriff's custodial responsibilities under section 3—6017. In fact, section 3—6017, which controls these duties of the Sheriff, does not deploy the word "necessary." Rather, consistent with the reasoning used by our supreme court in *Walsh*, we are free to look to the general nature and interrelationship between the grounds and various edifices maintained in the county courthouse and jailhouse complex to determine the context of the Sheriff's custodial duties. See *Walsh*, 397 Ill. at 294, 300; see also *Dahnke*, 168 Ill. at 114; *Hardin*, 71 Ill. App. at 114; *County of McDonough*, 84 Ill. App. at 409. Where, as here, the parking garage is maintained as a facility to serve the needs of the

courthouse and jail, it can be properly viewed as an adjunct to those facilities and, consequently, fully within the scope of the Sheriff's custodial duties. See *Walsh*, 397 Ill. at 294, 300; *County of McDonough*, 84 Ill. App. at 409. In that respect, we note that even the court in *De Kalb* recognized parking facilities as part of the court complex which subserves the county courthouse. See *De Kalb*, 213 Ill. App. 3d at 780 ("[w]e do not disagree that parking seems to be a reasonable adjunct to *** county buildings"). Accordingly, we find that the trial court's initial grant of summary judgment in favor of defendant was proper.

■ Finally, plaintiff contends that we should remand this matter to the trial court for the procedural reason that the court erred by refusing to consider her tender of the opinion in *De Kalb* for the first time in her motion to reconsider. Plaintiff contends that the trial court "applied an erroneous standard in evaluating" her motion when it stated that *De Kalb* was "not new case law and does not constitute a proper basis for reconsideration."

The purpose of a motion to reconsider is " 'to bring to the court's attention newly discovered evidence ***, changes in the law or errors in the court's previous application of existing law.' " *Sacramento Crushing Corp. v. Correct/All Sewer, Inc.*, 318 Ill. App. 3d 571, 577 (2000), quoting *Korogluyan v. Chicago Title & Trust Co.*, 213 Ill. App. 3d 622, 627 (1991). We review the trial court's application of law to the facts presented before it on a *de novo* basis. See *Sacramento Crushing Corp.*, 318 Ill. App. 3d at 577.

We find no error on the part of the trial court in denying plaintiff's motion to reconsider. It is clear from the trial court's memorandum in support of its order that it did in fact review plaintiff's arguments with respect to *De Kalb*, as it stated that it was considering the motion "on the merits." In so doing, the court examined *De Kalb* and its application to the instant set of facts and concluded that *De Kalb* simply does not assist plaintiff in her argument that defendant is responsible for the parking garage with respect to those custodial duties charged to the Sheriff under statute. Thus, contrary to plaintiff's assertion, the court did not deny her motion based on its belief that her presentation of *De Kalb* was an improper basis for reconsideration. Rather, it concluded that *De Kalb* did not apply to the instant case. Moreover, any question concerning the trial court's willingness to consider the belated submission of the *De Kalb* case in plaintiff's motion for reconsideration would, in any event, be of no consequence based upon our conclusion that *De Kalb* is distinguishable from the case at hand and would not change our result. Therefore, we find no error here in the court's denial of her motion to reconsider its prior order granting summary judgment to defendant.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

McNULTY and O'MALLEY, JJ., concur.