(No. 30034.—)

THE PEOPLE *ex rel.* Elmer Michael Walsh, Sheriff, Petitioner, *vs.* BOARD OF COMMISSIONERS OF COOK COUNTY *et al.,* Respondents.

*Opinion filed May 22, 1947—Rehearing denied September 16, 1947.*

THOMAS I. UNDERWOOD, GEORGE W. OTT, and WERNER W. SCHROEDER, all of Chicago, for petitioner.

WILLIAM J. TUOHY, State's Attorney, and ALAN E. ASHCRAFT, JR., (JACOB SHAMBERG, GORDON B. NASH, and GEORGE B. DUGGAN, of counsel,) all of Chicago, for respondents.

Per CURIAM: At a previous term of this court we granted leave to Elmer Michael Walsh to file, in his capacity as sheriff of Cook county, a petition for writ of *mandamus* against the following municipality and public officials: the board of commissioners of Cook county, the

individuals composing the board, Michael J. Flynn, county clerk of said county, and the circuit court and the several judges of said court. Petitioner was elected sheriff of Cook county at the November election, 1946, and assumed the duties of his office on December 2. Respondents' answer to the petition presents a question as to whether certain official acts of the circuit court and the board of commissioners deprives petitioner of a part of the functions of his office.

Section 9 of article X of the constitution directs that the circuit court shall fix by rule the number of deputies and assistants that certain county officers shall have the power to appoint, which provision includes a sheriff. The same constitutional provision empowers the county board to fix the compensation such appointees shall receive. In the exercise of the power thus conferred and in performance of its official duties, the circuit court, on January 6, 1947, determined, by rule entered of record, that petitioner should have 523 deputies and assistants, but the court declined to make provision for assistants to perform janitorial duties in and about the county courthouse and the county criminal court building. This included employees to perform services in and about such buildings, such as engineers' services, operating elevators, sweeping floors, washing windows, and other similar janitorial duties. Petitioner had requested the circuit judges to allow him 211 for such janitorial duties. No question is raised as to the number necessary to perform the service. The question is as to whether the circuit court was acting within the scope of its power in refusing to determine by rule the number necessary for janitorial service, and this relates back to a further question as to whether the sheriff or the board of commissioners of the county has the authority to make the appointments.

For many years the practice in Cook county has been for the circuit court to fix, by rule of court, the number

of deputies and assistants for janitorial service the sheriff could appoint and the board of commissioners fixed the compensation and made proper appropriations and levies to pay the same.

In 1943, the General Assembly amended the Counties Act by adding thereto section 61.17-2. (Ill. Rev. Stat. 1945, chap. 34, par. 64.17-2.) It provides: "The Board of Commissioners shall have the authority to create and maintain a department of maintenance and operation to which may be assigned such powers as the board may deem necessary for the proper maintenance and operation of all buildings owned or controlled by the County and used for County purposes."

The board of commissioners and other respondents rely upon said act and contend that whatever power the sheriff had as custodian of the building prior to 1943, the same has been taken away by the statute and conferred on the board of commissioners. On November 27, 1946, the commissioners adopted a resolution in which it was stated that the Chicago Civic Federation Survey had made a report to the commissioners in which they recommended that the janitorial forces of the county buildings be consolidated in the department of maintenance and operation. It was stated that the recommendation was made in the interest of economy and better business administration. The resolution contained a recital that the commissioners found the transfer of employees recommended by the civic federation was feasible, that it would be more economical, and it was resolved that the custodial functions of all county buildings be consolidated into such department. The resolution grouped the several employees according to the nature of their janitorial duties and fixed the compensation each should receive. The circuit court, when called upon to determine by rule the number of deputies and assistants the sheriff should appoint, recognized the resolution of the board of commissioners and declined to fix any number of

employees that petitioner could appoint for janitorial duties in and about said buildings.

The prayer of the petition is (1) that the board of commissioners be commanded to expunge its resolution of November 27, 1946; (2) that the circuit court be commanded to determine by rule the number of assistants required by the sheriff to discharge his duties of custody and care of the courthouse and criminal court building for the county's fiscal year beginning December 2, 1946, and (3) that the board of commissioners be commanded to appropriate for and provide for the payment of compensation to the assistants appointed by the sheriff, the same to be in numbers according to the rule of court.

Before considering the contentions of the respective parties as to the purpose and effect of section 61.17-2, it is well to refer to certain statutes which have been in force for many years and the construction and application given them by this court and the Appellate Court.

Section 25 of the Counties Act (Ill. Rev. Stat. 1945, chap. 34, par. 25,) provides that the county board of the several counties shall have power, among other things, "to take and have the care and custody of all the real and personal estate owned by the county. (2) To manage the county funds and county business, except as otherwise specifically provided." The first subparagraph of section 26 of the Counties Act authorizes the county board to erect or otherwise provide when necessary, and the finances of the county will justify it, and keep in repair, a suitable courthouse, jail and other necessary county buildings, and to provide proper rooms and offices for the accommodation of the several courts of record of the county, the county board, State's attorney, county clerk, county treasurer, recorder, sheriff, and the clerks of said courts, and to provide suitable furniture therefor. The second subparagraph of section 26 authorizes the county board to provide and keep in repair, when the finances of the county will per-

mit, suitable fireproof safes in the several county offices, including the sheriff; and by the third subparagraph it is authorized to provide suitable books, stationery, printing and postage for the use of the county board, sheriff and other county officers.

Section 14 of the Sheriffs Act (Ill. Rev. Stat. 1945, chap. 125, par. 14,) provides that the sheriff shall have the custody and care of the courthouse and jail of his county except as is otherwise provided. Section 24 of the act directs that when the sheriff retires from his office, he shall deliver to his successor papers, property levied on, etc., "and also the possession of the court house and jail of his county."

In *Dahnke* v. *People,* 168 Ill. 102, a controversy arose as to which of certain judges of the circuit and superior courts of Cook county should occupy a particular room in the courthouse, the said room being used in connection with the judges' official duties. After one of the judges had used said room and had adjourned court for the day to the following morning, Dahnke, acting on the order of the board of commissioners, changed the locks on the door and when the judge returned the following day to hold court, he was refused admission. Dahnke was fined for contempt of court, which order was sustained by the Appellate Court (57 Ill. App. 619,) and affirmed by this court. In determining who had the authority to assign the courtrooms in the courthouse to the various judges, it was held that such matter rested with the judges for final arrangements. In the examination of the question as to whether Dahnke was protected in his act of closing the door against the judge by the order of the board of commissioners, reference was made to subparagraph 1 of section 25 of the Counties Act, and section 14 of the Sheriffs Act, both of which are referred to above. The apparent conflict of authority of the sheriff to exercise custodial powers over the courthouse and the authority of the board

of commissioners in that behalf was resolved in favor of the authority of the sheriff under section 14 of the Sheriffs Act. The rule of construction applied was one that is well established in the law. It is that where there are two statutory provisions in apparent conflict, one of which is general and designed to apply to cases generally, and the other is particular and relates only to one subject, the particular provision must prevail and be treated as an exception to the general provision. By application of this principle, it was held that the provision of subparagraph 1 of section 25 of the Counties Act, that the county board was "to take and have the care and custody of all the real and personal estate owned by the county," gave way to the provision of the Sheriffs Act which provides that the sheriff shall have the custody and care of the courthouse and jail of his county except as is otherwise provided. In the decision of that case it was noted that both statutes had been enacted at the same session of the General Assembly in 1874. No consideration was given the words, quoted from the Sheriffs Act, "except as is otherwise provided." It is referred to in a brief filed in this case on behalf of the president of the board of commissioners. Although the *Dahnke case* did not call for a direct decision as to the authority of the sheriff, yet in considering the power of the board of commissioners to order the doors of the courtroom closed against one of the judges it was held that the board had no such authority; that, as the particular courtrooms in a courthouse had been provided for the judges, the possession thereof was in the hands and under the control of the courts themselves, and that the care and custody thereof rightfully belonged to the sheriff as the executive officer of the court.

*Hardin* v. *County of Sangamon,* 71 Ill. App. 103, was a forcible entry and detainer action instituted on the direction of the county board against Hardin to oust him from desk room and space which he occupied in the office of the

recorder of deeds of that county. Hardin was not a public official or connected with any county office by appointment or otherwise. He carried on a private abstract business and had located his desk in the recorder's office. The question considered was as to whether the action could be maintained on the authority of the county board. In determining the issue, the Appellate Court made reference to subparagraph 1 of section 25 of the Counties Act, and section 14 of the Sheriffs' Act. When the opinion was filed in the *Hardin case,* the *Dahnke case* had been decided by the Appellate Court but no opinion had been filed by this court. In disposing of the *Hardin case,* the court followed the reasoning of the Appellate Court in the. *Dahnke case* in holding that the custody and control which the county board was entitled to exercise under the authority of the constitution and statutes was such as attaches to and flows from the ownership of the courthouse by the county; that the authority of the sheriff under section 14 is such as attaches to and flows from the inherent powers and duties of his office at common law and as recognized by the constitution, and declared by the statutes as the attendant upon the court and as the court's chief executive officer. Further referring to the *Dahnke case,* it was said: "There is nothing inconsistent in the performance of such duties by the sheriff with the other duty of the county board to control and manage the property of the county and its affairs, and there is nothing necessarily antagonistic in the statutes that impose, in substantially the same language, the duty upon both county board and sheriff, to have the custody and control of the courtrooms of the county." It was held that the action of the county board in instituting the suit should be sustained.

In *County of McDonough* v. *Thomas,* 84 Ill. App. 408, the action was by the sheriff of McDonough county to sustain his appointment of a person to perform the janitorial duties in and about the courthouse. The county board

had selected another to perform such services. Again reference was made to section 14 of the Sheriffs Act and some of the provisions of the Counties Act above referred to. It was held that the care and custody of the county courthouse and jail are within the common-law powers and duties of the sheriff and that the employment of a janitor to assist him in such matter was a right incident to his office. The rule of construction as announced in the *Dahnke case* was applied to the provisions of the Counties Act and section 14 of the Sheriffs Act. Also, see *County of Edgar* v. *Middleton,* 86 Ill. App. 502.

The cases cited establish the principle that the sheriff of a county has, as an incident to his official duties, the custody of the courthouse and has the right to engage janitors to assist him in the performance of that duty. The power to fix the amount of compensation to be paid for janitor service was not involved in any of the cases cited but the constitutional provision is explicit on that subject and directs that it shall be determined by the county board. The cases referred to involve the custody of the courthouse but no distinction can be made in this case between the custodian of the county courthouse and the custodian of the county criminal court building.

Section 8 of article X of the constitution designates the county officers who shall be elected in each county, one of whom is a sheriff. The provision contains no specification of powers or duties of a sheriff and makes no reference as to custodial duties over the courthouse. Petitioner contends that since the office of sheriff is created by constitutional provision by mere designation of the office of sheriff, such provision confers upon the incumbent of the office the powers and duties of a sheriff possessed at common law. It is conceded that the duties of a constitutional officer may be added to by statute, but none, as they were known at common law, may be taken away. It is contended that if section 61.17-2 be construed as giving the board of

commissioners the power to appoint and select the janitorial force necessary to care for the courthouse and criminal court building, such enactment in effect takes from petitioner his common-law powers as custodian of the building and thereby deprives him of the functions of his office that flow from the constitutional provision creating the office of sheriff. Respondents contend that the sheriff's source of authority over the courthouse and criminal court building is not of common-law origin and is not protected by the constitutional provision designating the office of sheriff as a county office, but they argue that the authority is derived from statute. If the office of sheriff is not protected by the constitutional provision in the exercise of the custodial powers of the county buildings, then it was within the power of the General Assembly to change such authority and confer it on the board of commissioners as they claim was done by section 61.17-2.

The specific point was not involved in *Dahnke* v. *People,* 168 Ill. 102, but what was said in that opinion has been followed in other cases so that it stands as a precedent to the point involved here. In that case it was said: "Sheriffs, as elected under the constitution, have the same powers with which they were clothed at common law." The court quoted from Murfree in his work on Sheriffs, section 42, chapter 2, as follows: "The very name and office of sheriff imply the possession by that functionary of all the powers, and the obligation to perform all the duties of a common law sheriff, except so far as those powers and duties may have been modified by State constitutions or constitutional statutes. * * * When the office of sheriff is a constitutional office in any State, recognized and designated *eo nomine* by the constitution as a part of the machinery of the State government, the sheriff, *ex vi termini,* must possess, in that State all the substantial powers appertaining to the office by common law. It is competent for the State legislature to impose

upon him new duties growing out of public policy or convenience, but it cannot strip him of his time honored and common law functions, and devolve them upon incumbents of other offices, created by legislative authority."

It was noted in the *Dahnke case,* that the legislature cannot transfer to other officers elected by the board of supervisors the power of the sheriff to have the custody and control of the jail and the prisoners therein when the constitution provides for the election of sheriff without designating what his powers shall be. Cited in support are *State* v. *Brunst,* 26 Wis. 412; *People* v. *Keeler,* 29 Hun. 175. In determining the common-law duties of the Attorney General, this court in *Fergus* v. *Russel,* 270 Ill. 304, cited the *Dahnke case* and applied the principle embodied in the quotation from Murfree on Sheriffs to the office of Attorney General. Also, see, *People* v. *Clampitt,* 362 Ill. 534.

Counsel for respondents cite *Cummings* v. *Smith,* 368 Ill. 94; *Fergus* v. *Russel,* 270 Ill. 304; *People ex rel. Rexses* v. *Cermak,* 317 Ill. 590; and *Witter* v. *County Comrs.* 256 Ill. 616, in support of their contention that the powers and duties of a sheriff flow from statutory enactment and do not arise from constitutional provision or the common law. The *Cummings case* was an original *mandamus* action brought by the judge of the city court of Kewanee against the board of commissioners of Cook county and the sheriff of said county to command reimbursement of his expenses of travel and maintenance in holding court in Chicago. As to the county commissioners, the question was as to whether such payment would be in violation of the constitutional provision prohibiting an increase or decrease in salary during the term. By arrangement of the judges of the circuit and superior courts, the sheriff received as trustee such gratuities as the participants to a marriage ceremony might offer for the performance of such service by a judge of either of said courts. An

issue was raised as to the application of a part of that fund to the payment of petitioner's claim. There was nothing in that case as to the source of the sheriff's authority. Applying the principle announced in the *Dahnke case,* the court made the following pertinent statement: "The fact that the sheriff is custodian of the courthouse as well as trustee of the fund is of no significance. His custody of the building is as an officer of the courts, subject to their control. The sheriff has no power to control the' use of the courtrooms by the courts or judges thereof and he cannot dictate what rooms the court shall occupy. That rests with the courts as an inherent power."

In the *Witter case,* the question was as to the division of powers, and the citation of the *Dahnke case* and what was said in reference to it was pronounced in determining whether the offices attempted to be created by legislative enactment were in violation of the constitutional provision requiring the separation of powers. An examination of the other cases cited will disclose that the question involved here was not considered in those opinions. The cases cited by respondents on this point have no bearing on the question.

The common-law text writers agree that the office of sheriff is of ancient origin. According to Blackstone, (vol. 1, chap. 9,) the office of sheriff was originally created to relieve certain of the nobility from the burdens of their positions in their respective shires or counties. By reason thereof the office was closely associated with the affairs of the King. Blackstone says: "As the keeper of the King's peace both by common law and special commission he is the first man in the county. * * * In his ministerial capacity the sheriff is bound to execute all processes issuing from the King's courts * * * he must see the judgments of the court carried into execution."

No case or text has been cited where the sheriff's janitorial duties at common law have been discussed, but the

character of his duties and his services to the court were such as to imply that the care of the building and the courtrooms were incidents of his office.

The opinion of this court in the *Dahnke case,* and the opinions of the Appellate Court in the *Thomas* and *Middleton cases* support such conclusion. We hold that the office of sheriff is a constitutional office, that the duties which rested on such office at common law rested on the office of sheriff as created by the constitution; that as an incident to the general duties of a sheriff at common law he had the custody of the courthouse, that such duty flowed from his position as executive officer of the court, and that by virtue of the constitutional provision such duty is inherent in the office of sheriff in this State.

If it be conceded that section 61.17-2 is susceptible of the construction claimed by respondents, then it would follow that the power of selection of janitorial personnel for the court buildings was taken from the office of sheriff and conferred on the board of commissioners. We have considered the selection of janitorial assistants to the sheriff as it reflects upon the duties incident to his office as created by the constitution. If the legislature could take from the office a part of the duties conferred by constitutional provision, then it could, in effect, abolish the office by withdrawing all functions and giving them to another officer. Well-established principles of law forbid such legislation.

The effect of this opinion on the application of section 61.17-2 and other sections relative thereto should be restricted to the custodial authority of the sheriff to the particular county buildings involved in this case. It should also be limited to the particular assistants of the sheriff, the selection of whom is in question here.

It is contended on behalf of respondents that the constitutional provision which empowers the circuit court to fix the number of deputies and assistants a sheriff may

have vests the court with a discretion as to such numbers. From this it is argued that a *mandamus* writ will not issue to command an official to perform a discretionary act. A court will not issue a writ the effect of which command would be to substitute the court's judgment or discretion for that of the body which is commanded to act. The application of the writ is restricted to directing that action be taken and it is not available to direct what action shall be taken. *People ex rel. Elmore* v. *Allman,* 382 Ill. 156; *People ex rel. Schweder* v. *Brady,* 268 Ill. 192; *People ex rel. Green* v. *Board of Comrs.* 176 Ill. 576.

For the reasons assigned, the writ of *mandamus* will be awarded.