(No. 55047.—

THE CHICAGO ASSOCIATION OF COMMERCE AND INDUSTRY *et al.*, Appellees and Cross-Appellants, v. THE REGIONAL TRANSPORTATION AUTHORITY *et al.*, Appellants and Cross-Appellees.

*Announced June 11, 1981.—Opinion filed September 30, 1981.*

180

James C. Munson, Roger L. Taylor, and Kathleen Kelly Spear, of Kirkland & Ellis, and Carl J. Frank, all of Chicago, for appellant.

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago (Clifford L. Weaver, Barbara Baran, Claudia J. Lovelette, and Susan B. Harmon, of counsel), for appellee.

Robert L. Graham and Douglass W. Cassel, Jr., of Chicago, for *amici curiae* Chicago Council of Lawyers and Business and Professional People for the Public Interest.

MR. JUSTICE CLARK delivered the opinion of the court:

Defendants, the Regional Transportation Authority (RTA) and its chairman and directors, filed a motion for direct appeal to this court from an order of the circuit court of Cook County issuing a writ of *mandamus* "to adopt and promptly implement a policy to provide adequate public transportation in the six county area" and "to consider and decide upon the proper and specific course or courses of action to be taken" under the Regional Transportation Authority Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 701.01 *et seq.*). Plaintiffs, the Chicago Association of Commerce and Industry and Samuel R. Mitchell, filed a motion for direct appeal to this court from the same order because it failed to specifically require defendants to increase fares or reduce services or a combination thereof to preserve an adequate level of regional transportation service. We allowed the parties' motions for direct appeal (73 Ill. 2d R. 302(b)). After expedited proceedings, we reversed the circuit court's order by an order entered June 11, 1981, and denied plaintiffs' cross-appeal.

Plaintiffs filed an amended complaint on June 1, 1981, seeking, *inter alia,* a writ of *mandamus* requiring defendants to comply with certain statutory duties under the RTA Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 701.01 *et seq.*) to assure the continued operation of an adequate transporta-

tion system and to fund the services by fare increases and service reductions, allegedly "the only means legally available." The statutory duties allegedly arise out of section 1.02(b), which states the purpose of the Act is "to provide for *** public transportation" (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 701.02(b)); section 2.20(a), which states the RTA has "all powers necessary to meet its responsibilities and to carry out its purposes" (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 702.20(a)); section 2.04, which states the RTA shall provide for the level and nature of fares and the nature and standards of public transportation (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 702.04); and section 4.01, which states the board shall control the finances of the RTA and provide for payment of debts and expenses (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 704.01). Plaintiff alleged that defendants, in addition, have a common law duty to provide adequate transportation. Plaintiff further alleged that defenddants breached their duties by failing to maintain a balanced budget, by deferring the implementation of fare increases previously enacted, and by refusing to otherwise increase fares and reduce services or such combination thereof as may be necessary to preserve an adequate level of service.

On June 4, 1981, defendants filed an answer to the amended complaint and both parties filed a stipulation of facts. The parties stipulated that the RTA currently operates at a deficit. The RTA is in arrears in making subsidy payments for the operation of the local transportation services, including the Chicago Transit Authority (CTA), several commuter railroads, and many suburban bus systems. Because of the RTA's failure to pay its subsidies, some transportation services have ceased or will cease to operate, and others have reduced services and increased fares. The RTA also owes millions of dollars to noncarrier creditors and has insufficient funds to pay its bills.

The parties also stipulated that in December 1980 the RTA published a five-year program (1981-85) (see Ill. Rev.

Stat. 1979, ch. 111 2/3, par. 702.01) which projected a $150 million deficit for fiscal 1981 unless the board made "fairly drastic service cuts, along with increases in fares throughout the region, as the only way to maintain the financial integrity of the system." On December 22, 1980, after public hearings, the board of directors enacted Ordinance No. 80—317, which provided for specific fare increases effective January 1, April 1, and August 1, 1981. The first increase, modified by a deferred increase on the CTA monthly pass, became effective on January 1. The record discloses that the board at that time took some action requiring service reductions, but it is unclear as to the level of reductions.

The parties further stipulated that on January 30, 1981, Price Waterhouse & Company, special assistant auditors for the Auditor General of the State of Illinois, released a financial statement providing that the RTA's ability to meet its debt obligations and continue its present level of financial assistance to carriers was uncertain. The RTA, it continued, owed the CTA $51 million as of January 23, 1981. We must note the financial statement in the record provided that although fare increases and service reductions enacted December 22, 1980, would aid in alleviating the financial problems, "it is anticipated that the RTA will continue to experience cash shortages during the fiscal year ending September 30, 1981."

In addition, the parties stipulated that on March 16, 1981, the board enacted Ordinance No. 81—49, which deferred the implementation of the April 1 fare increase. On May 26, 1981, the board convened to consider proposed ordinances for fare increases and service reductions. At that meeting Chairman Lewis W. Hill announced that the RTA had insufficient funds to meet its obligations for the next three weeks. The board did not enact an ordinance to increase fares or reduce services at that meeting.

The parties also stipulated that the board on numerous

occasions has met with public officials and testified at legislative committee hearings to express the need for the General Assembly to provide additional revenues for the RTA.

On June 5, 1981, defendants moved to dismiss the amended complaint, and the circuit court denied the motion. The circuit court also entered the following order in favor of plaintiffs:

"A. The Defendants, and each of them, shall forthwith exercise their discretion and powers under the RTA Act to adopt and promptly implement a policy to provide adequate public transportation in the six county area subject to their jurisdiction.

B. Further, the Defendant RTA Directors shall convene forthwith at their regular place of meeting, there to consider and decide upon the proper and specific course or courses of action to be taken by them, within the powers and authority conferred upon them by the RTA Act, to comply with their duty as set out in paragraph A hereof. In so considering and deciding, the said Directors shall give consideration to all their powers under the Act, including, but not limited to, raising fares, curtailing service, reducing expenses, and securing revenue from other legally proper sources. In addition, the RTA Directors shall, in so considering and deciding, give special consideration to the findings and conclusions set out in this Order and to the immediate need for action by them to seek to avert a total or substantial shutdown of public transportation services in the six county region subject to their jurisdiction.

C. Further, the RTA Directors are commanded to make return to this Court on the 12th day of June, 1981, at 11:00 a.m., specifying the manner in which they have complied with this Order."

That court, moreover, made a special finding there was no just reason for delaying enforcement or appeal of the order (73 Ill. 2d R. 304(a)).

We have concluded that *mandamus* is not appropriate here. A writ of *mandamus* is issued in the sound discretion of the court. (*People ex rel. Carey v. Scotillo* (1981), 84 Ill. 2d 170, 175; *Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 334.) This court is limited to deciding matters of law only. (*People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 544; *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, 544, *cert. denied* (1980), 445 U.S. 953, 63 L. Ed. 2d 788, 100 S. Ct. 1603.) Plaintiff must set forth every material fact needed to show he is entitled to the writ (*People v. Teschner* (1980), 81 Ill. 2d 187, 194), and the burden rests on him to show he has a clear, legal right to it (*Horn v. Rincker* (1981), 84 Ill. 2d 139, 148). *Mandamus* usually issues to compel the performance of a nondiscretionary, ministerial duty or act. *People ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. Clark* (1957), 12 Ill. 2d 515, 519; see also *People ex rel. Jones v. Webb* (1912), 256 Ill. 364, 373.

Where the performance of an official duty or act involves the exercise of judgment or discretion, the officer's action is not subject to review or control by *mandamus*. (*South Chicago Community Hospital v. Industrial Com.* (1969), 44 Ill. 2d 119, 122; *People ex rel. Town Court of Cicero v. Harrington* (1961), 21 Ill. 2d 224, 225; *People ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. Clark* (1957), 12 Ill. 2d 515, 520; *People ex rel. Brignall v. Lewe* (1943), 383 Ill. 549, 556; *cf. People ex rel. Gill v. 110 S. Dearborn St. Corp.* (1936), 363 Ill. 286, 289.) The writ will not lie when its effect is "to substitute the court's judgment or discretion for that of the body which is commanded to act." (*Ickes v. Board of Supervisors* (1953), 415 Ill. 557, 563, quoting *People ex rel. Walsh v. Board of* Commissioners (1947), 397 Ill. 293, 305.) The court will not interfere in determining how defendants exercise their discretion in discharging their duties. *Taylor v. Wentz* (1958), 15 Ill. 2d 83, 90; *People ex rel. Jones v. Webb* (1912), 256 Ill. 364, 37374.

The RTA Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par.

701.01 *et seq.*) clearly vests the board with discretion in acting to "provide for, aid and assist public transportation in the northeastern area of the State ***." (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 701.02(b).) The Act states that to accomplish its purposes the RTA "shall, on a continuing basis determine the level, nature and kind of public transportation which should be provided for the metropolitan region." (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 702.01(a).) Where the RTA operates public transportation facilities, "it shall provide for the level and nature of fares or charges *** and the nature and standards of public transportation to be so provided." (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 702.04.) The Act provides that the RTA shall have "all powers necessary to meet its responsibilities and to carry out its purposes ***." (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 702.20(a).) In addition, the board "shall control the finances" of the RTA. (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 704.01.) See *Day v. Regional Transportation Authority* (1977), 66 Ill. 2d 533, 534-38; *Hoogasian v. Regional Transportation Authority* (1974), 58 Ill. 2d 117, 121-22, *appeal dismissed for want of a substantial Federal question* (1974), 419 U.S. 988, 42 L. Ed. 2d 261, 95 S. Ct. 298.

Because the RTA is vested with the discretion to determine the manner in which public transportation is provided, the exercise of that discretion is not subject to review or control by *mandamus.* (*South Chicago Community Hospital v. Industrial Com.* (1969), 44 Ill. 2d 119, 122-23.) Although the order commanding defendants to "adopt and promptly implement a policy to provide adequate transportation" and "consider and decide upon the proper and specific course or courses of action to be taken" is drafted in broad terms, it nevertheless subjects defendants' actions to review. This court has consistently refused to interfere in determining how defendants exercise their discretion in discharging their duties. (*Taylor v. Wentz* (1958), 15 Ill. 2d 83, 90.) For these reasons *mandamus* is improper.

We also conclude that the trial court was correct in denying plaintiffs' request that the court order fare increases and service reductions. Although under some circumstances *mandamus* may lie to compel a public officer to proceed with the exercise of discretion (*Rock v. Thompson* (1981), 85 Ill. 2d 410; *People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 99; *People ex rel. Abner v. Kinney* (1964), 30 Ill. 2d 201, 207; see *Chicago & Northwestern Transportation Co. v. Matoesian* (1981), 85 Ill. 2d 404), it will not lie to compel him to act in a certain manner while exercising that discretion (*Rock v. Thompson* (1981), 85 Ill. 2d 410; *People ex rel. Mathes v. Foster* (1977), 67 Ill. 2d 496, 504-05; *People ex rel. Town Court of Cicero v. Harrington* (1961), 21 Ill. 2d 224, 225; *People ex rel. Walsh v. Board of Commissioners* (1947), 397 Ill. 293, 305; see *Chicago & Northwestern Transportation Co. v. Matoesian* (1981), 85 Ill. 2d 404; *People ex rel. Brignall v. Lewe* (1943), 383 Ill. 549, 556-57). This court has refused to interfere in determining how defendants exercise their discretion in discharging their duties. (*Taylor v. Wentz* (1958), 15 Ill. 2d 83, 90; *People ex rel. Jones v. Webb* (1912), 256 Ill. 364, 373-74.) The writ will not issue when the effect of compliance is to "substitute the court's judgment or discretion for that of the body which is commanded to act." *People ex rel. Walsh v. Board of Commissioners* (1947), 397 Ill. 293, 305.

As shown above, the Act clearly vests the board with discretion in providing for public transportation. Had the circuit court ordered defendants to increase fares or reduce services, the court, rather than defendants, would have been selecting the method to provide for public transportation. Where discretion is permitted, *mandamus* cannot be used to compel the method or manner by which defendants implement statutory requirements (*People ex rel. Mathes v. Foster* (1977), 67 Ill. 2d 496, 504-05; *People ex rel. Walsh v. Board of Commissioners* (1947), 397 Ill. 293, 305), and it will not issue where the effect is to substitute the court's

188

discretion for that of the defendants (*People ex rel. Walsh v. Board of Commissioners* (1947), 397 Ill. 293, 305).

For these reasons we reversed the circuit court's order of June 5, 1981, and denied the relief requested in plaintiffs' cross-appeal.

*Order reversed.*